# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

United States of America,

          Plaintiff,

       v.

Lennar Communities Development, Inc.

         Defendant.

CIV-09-2252-PHX-FJM

**CONSENT DECREE**

WHEREAS Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint initiating this action against Lennar Communities Development, Inc. ("LCD" or Defendant") in the United States District Court for the District of Arizona requesting civil penalties and injunctive relief;

WHEREAS Plaintiff, the United States of America, alleges that LCD violated the Clean Air Act (the "Act"), 42 U.S.C. §§ 7401 *et seq*., and the federally enforceable Arizona State Implementation Plan ("SIP"), including section 310 of the Maricopa County Air Quality Department ("MCAQD" or the "Department") Regulations, by failing to implement work practices required to abate fugitive dust emissions on twelve (12), separate occasions;

WHEREAS EPA issued Finding and Notice of Violation R9-05-13 ("NOV") with respect to these allegations on April 27, 2005;

WHEREAS LCD disputes the violations alleged in the NOV and the Complaint;

WHEREAS this Consent Decree does not constitute an admission of liability by LCD; and

WHEREAS the parties have agreed that settlement of the civil judicial claims as alleged in the Complaint is in the public interest and that entry of this Consent Decree without further litigation is the most appropriate way to resolve this action,

THEREFORE IT IS ORDERED, ADJUDGED, AND DECREED as follows:

## I. JURISDICTION AND PARTIES BOUND

1. This Court has jurisdiction over the subject matter of this action and over the parties pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.  Venue is proper in this Court pursuant to 28 U.S.C.   § 1391(b) and (c) and § 1395(a), and § 113(b) of the Act, 42 U.S.C. § 7413(b), because the violations that are the subject of the Complaint in this action took place in Maricopa County, Arizona, and because the Defendant is doing business in this District.  The Complaint states a claim upon which relief may be granted against LCD pursuant to 42 U.S.C. § 7413(b).  A notice of commencement of this action has been given to the State of Arizona through the Department in accordance with section 113(b) of the Act, 42 U.S.C. § 7413(b).  Defendant shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter, enforce, modify or terminate this Consent Decree.

2. This Consent Decree shall apply to and be binding upon Defendant, its successors and assigns.  It shall also apply to and be binding upon the United States on behalf of the EPA.

3. If Defendant merges with or is acquired by a third party, Defendant shall attach a copy of this Consent Decree to any merger or acquisition agreement and shall make performance of the obligations of Defendant under this Consent Decree an obligation of the new entity, in the case of a merger, or the purchaser, in the case of an acquisition.  Any such merger or acquisition will not relieve Defendant from the obligations of this Consent Decree.  Nothing herein shall preclude Defendant from allowing its successors in interest to perform Defendant's obligations under this Consent Decree.  However, Defendant is ultimately responsible for full compliance with the terms of this Consent Decree.

## II. <u>CIVIL PENALTY</u>

4.    Within 10 days after entry of this Consent Decree LCD shall pay a civil penalty of THIRTY-EIGHT THOUSAND FOUR HUNDRED AND TWENTY-FIVE DOLLARS ($38,425) to the United States.

5.    Payments under this Consent Decree shall be made by check payable to the United States Treasury and mailed by overnight mail to:

> United States Attorney's Office
> Financial Litigation Unit
> 405 S. Congress Street, Suite #4900
> Tucson, AZ 85701-5041

Concurrently with the payment, Defendant shall send notice of payment to EPA and the United States Attorney's Office at the addresses listed in section X (Notification). The notice of payment shall identify:

(a)    the date and amount of money sent;

(b)    this case by name;

(c)    the civil action number;

(d)    the United States Attorney's Office file number (2005V01017) and DOJ File No. 90-5-2-1-08655;

(e)    this Consent Decree (including date of entry); and

(f)    a description of the reason for the payment, including the paragraph number of this Consent Decree that is most relevant to the payment.

## III. <u>DEFINITIONS</u>

6.    Definitions for terms used in this Consent Decree are as follows:

(a)    "Effective date."  The "effective date" of this Consent Decree is the date of entry of the Consent Decree by the Clerk of the United States District Court for the District of Arizona.

    (b)    For purposes of this Consent Decree, "bulk materials" means any material, including but not limited to, earth, rock, silt, sediment, sand, gravel, soil, fill, aggregate less than 2 inches in length or diameter (i.e., aggregate base course (ABC)), dirt, mud, demolition debris, cotton, trash, cinders, pumice, saw dust, feeds, grains, fertilizers, and dry concrete, which are capable of producing fugitive dust.

    (c)    For purposes of this Consent Decree, "carry-out/trackout" means any and all bulk materials that adhere to and agglomerate on the exterior surfaces of motor vehicles, haul trucks, and/or equipment (including tires) and that have fallen onto a paved area accessible to the public.

    (d)    For purposes of this Consent Decree, "disturbed surface area" means a portion of the earth's surface (or material placed thereupon) which has been physically moved, uncovered, destabilized, or otherwise modified from its undisturbed native condition, thereby increasing the potential for the emission of fugitive dust. An area is considered to be a disturbed surface area until the activity that caused the disturbance has been completed and the disturbed surface area meets the stabilization standards of section 304.3 of Maricopa County Air Quality Department Rule 310.

    (e)    For purposes of this Consent Decree, "dust generating operation" means any activity capable of generating fugitive dust, including but not limited to, land clearing, earth moving, weed abatement by discing or blading, excavating, construction, demolition, bulk material handling, storage and/or transporting operations, vehicle use and movement, the operation of any outdoor equipment, or unpaved parking lots.

    (f)    For purposes of this Consent Decree, "earthmoving operation" means the use of any equipment for an activity which may generate fugitive

dust, such as but not limited to, cutting and filling, grading, leveling, excavating, trenching, loading or unloading of bulk materials, demolishing, blasting, drilling, adding to or removing bulk materials from open storage piles, backfilling, soil mulching, landfill operations, or weed abatement by discing or blading.

(g)     For purposes of this Consent Decree, "fugitive dust" means the particulate matter, which is not collected by a capture system, which is entrained in the ambient air, and which is caused from human and/or natural activities, such as but not limited to, movement of soil, vehicles, equipment, blasting, and wind.   Fugitive dust does not include particulate matter emitted directly from the exhaust of motor vehicles and other internal combustion engines, from portable brazing, soldering, or welding equipment, and from piledrivers, and does not include emissions from process and combustion sources that are subject to other Maricopa County rules.

(h)     For purposes of this Consent Decree, "work site" means any property: (1) located in Maricopa County, Arizona; (2) upon which any dust generating operations and/or earthmoving operations occur; and (3) for which LCD is the earthmoving/dust control permit holder.

## IV. <u>INJUNCTIVE RELIEF</u>

7.     In order to abate fugitive dust emissions, LCD agrees to the following:

(a)     LCD's current managers with responsibilities for field operations, field superintendents, project managers, and any other employees whose job responsibilities involve dust generating operation(s) at LCD's work sites in Maricopa County, Arizona must complete the comprehensive dust control training provided under section 309.2 of MCAQD Rule

310 (the "Class") within three (3) months of the Effective Date of this Consent Decree.  In addition, any new employees hired by LCD after the Effective Date of this Consent Decree who are required to complete the dust control training under this subparagraph must complete the training within three (3) months of the date of hire.  All current and new employees of LCD who are required to complete the dust control training under this subparagraph must also complete a refresher dust control course administered by the Department at least once every year after initial training.

(b)     In any future contract with subcontractors whose job responsibilities will require them to spend all or a portion of their time at LCD's work sites in Maricopa County, Arizona, LCD shall require compliance with MCAQD Rule 310.  LCD shall also inform all current and future subcontractors of the availability of training described in paragraph 7(a) of this Consent Decree and encourage the Subcontractors to attend training.

(c)     LCD shall provide to EPA certification that all current and new employees of LCD have been trained as required under § IV, paragraph 7, subparagraph(a) of this Consent Decree.  These certifications shall list the names of all employees trained, and for each such employee, the date each employee was hired and the date each employee received the dust control course or refresher course.  These certifications shall be due to the EPA every six (6) months from the Effective Date of this Consent Decree.  The last certification will be due two (2) years after the Effective Date of this Consent Decree.

(d)     Within three (3) months of the Effective Date of this Consent Decree at any of its work sites having five (5) acres or more of disturbed surface area at any given time, LCD will have in place a qualified Dust

Control Coordinator.  A Dust Control Coordinator shall be considered qualified when he/she has: (1) full authority to ensure dust control measures are implemented onsite, including conducting inspections, filing required reports, deploying dust suppression resources, and modifying or shutting down activities as needed to control dust; and (2) successfully completed the dust training courses or equivalent training provided  by the Department that is referenced in § IV, paragraph 7, subparagraph (a).  The Dust Control Coordinator shall be responsible for managing dust prevention and dust control on the site.   In accordance with section 310.1 of MCAQD Rule 310, a Dust Control Coordinator shall be present at all times primary dust generating operations by LCD and/or its subcontractors, related to the purposes for which the dust control permit was obtained, occur at work sites having five (5) acres or more of disturbed surface area.  The requirement for a Dust Control Coordinator shall lapse when the area of disturbed soil becomes less than five (5) acres and the previously disturbed areas have been stabilized in accordance with the requirements of MCAQD Rule 310.

All obligations specified in section IV of this Consent Decree shall cease two (2) years after the Effective Date of this Consent Decree.

## V. SUPPLEMENTAL ENVIRONMENTAL PROJECT

8.   LCD shall implement the Supplemental Environmental Project ("SEP"), in accordance with the terms and schedules set out in this Consent Decree and in Attachments 1 and 2 which are attached to, incorporated into, and fully enforceable under, this Consent Decree.  The SEP shall be completed within THREE HUNDRED AND SIXTY (360) days after entry of this Consent Decree.  The SEP involves the elimination of substantial amount of harmful air emissions from diesel fueled vehicles and equipment through the completion of discrete retrofit projects meeting the criteria

identified in Attachments 1 and 2.  The SEP is intended to yield significant environmental or public health benefits and the anticipated emission reductions go beyond the requirements of existing law.  In implementing the SEP, LCD shall spend a total of not less than ONE HUNDRED FORTY-FOUR THOUSAND AND NINETY-FOUR DOLLARS ($144,094) in eligible SEP costs as well as any and all escrow interest accrued ("SEP Funds").  Eligible SEP costs are defined in Paragraph 2 of Attachment 1 and include the costs of planning and implementing the SEP, but do not include LCD's overhead, additional employee time and salary, administrative expenses, legal fees, and contractor oversight.  LCD may use contractors and consultants, including the City of Phoenix ("City"), in implementing the SEP.

9.   LCD is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Consent Decree.  To have satisfactorily completed the SEP, LCD shall have fully funded the escrow, satisfactorily completed the retrofits, and spent the full SEP Funds on retrofits in accordance with the priorities and limitations of this Consent Decree and Attachments 1 and 2 hereto.  "Fully fund" means establishing interest-bearing escrow accounts in the amounts specified for the LCD SEP according to the requirements of this Consent Decree and Attachments 1 and 2 hereto.

10.   With regard to the SEP, LCD certifies the truth and accuracy of each of the following:

(a)   That, as of the date of executing this Consent Decree, LCD is not required to perform or develop the SEP by any federal, state, or local law or regulation, nor is LCD required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

(b)   That the SEP is not a project that LCD was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Consent Decree;

(c)   That LCD has not received, and is not negotiating to receive, credit for the SEP in any other enforcement action;

(d)     That LCD will not receive any reimbursement for any portion of the SEP from any other person; and

(e)     LCD also agrees that any emissions reductions resulting from the SEP shall be for the benefit of the environment only and LCD shall not bank, claim, transfer, or in any way use any emission reductions that result from them in connection with any emissions reduction trading or permitting program under the Clean Air Act.

(f)     That under penalty of law it would have agreed to perform a comparably valued, alternative project other than a diesel emissions reduction Supplemental Environmental Project, if the EPA were precluded by law from accepting a diesel emissions reduction Supplemental Environmental Project.

11.   SEP Completion Report - Within THIRTY (30) days after LCD concludes that the LCD SEP has been fully implemented in accordance with the requirements of this Decree, LCD shall submit to EPA by overnight delivery or certified mail the SEP Completion Report that shall contain the following:

(a)     A detailed description of the SEP as implemented;

(b)     An itemized list and description of all eligible SEP costs;

(c)     For all eligible SEP costs, itemized copies of purchase orders and receipts or canceled checks; and

(d)     An explanation of any difficulties or delays in the implementation of the SEP and the solutions thereto.

12.   Following receipt of the SEP Completion Report, EPA will do one of the following:

(a)     provide written notice that it accepts the SEP Completion Report;

(b)     reject the SEP Completion Report and provide written notice to LCD of any deficiencies, and grant LCD an additional THIRTY (30) days, and such other additional time as EPA may in its sole and unreviewable discretion conclude is reasonable, in which to correct any deficiencies;

(c)    reject specific expenses as not being eligible SEP expenses as defined in Attachment 1; or

(d)    reject the SEP Completion Report and provide written notice to LCD of its failure to satisfactorily complete the SEP in accordance with the requirements of this Consent Decree, and seek stipulated penalties as specified in the Consent Decree.

13.    LCD shall maintain, for a period of one year after EPA accepts the SEP Completion Report, legible copies of documentation of the underlying research and data for any and all documents or report submitted to EPA regarding the SEP, and LCD shall provide the documentation of any such underlying research and data to EPA within FOURTEEN (14) days of a request for such information.

14.    Application of any control technologies in implementing the SEP shall not be construed as an endorsement or approval by EPA of any particular brand of such product or technology.   Also, the involvement of any third party in the implementation of the SEP is not intended nor shall it be construed as a specific endorsement or approval by EPA of such third party or of any product or service provided by such third party.

15.    Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under section IX of this Consent Decree (Dispute Resolution).  No other disputes arising under this section shall be subject to Dispute Resolution.

16.    Any public statement, oral or written, in print, film, or other media, made by LCD making reference to the SEP under this Consent Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. Lennar Communities Development, Inc., taken on behalf of the U.S. Environmental Protection Agency resolving allegations that LCD violated the federal Clean Air Act."

17.   If a *force majeure*, as defined in Paragraph 26 of this Consent Decree, prevents LCD from performing a portion of the SEP without expending all of the funds designated for the SEP's implementation in Attachments 1 and 2, LCD shall notify EPA in accordance with section X of the Consent Decree.  Upon EPA's agreement that the SEP cannot be satisfactorily completed, LCD shall halt work on the SEP, compute the amount of any funds (including accrued interest) designated for the SEP that have not been spent and, after obtaining agreement from EPA, direct such funds to another of the projects described in the Consent Decree and Attachments 1 and 2, as applicable.

18.   Each report submitted by LCD under this section shall be signed by a duly authorized LCD official in accordance with section X of this Consent Decree.  This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

18.a   For federal income tax purposes, LCD agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

## VI. <u>STIPULATED PENALTIES</u>

19.   Except as may be excused under section VIII (*Force Majeure*) of this Consent Decree, and for a period of two (2) years from the Effective Date of this Consent Decree, LCD shall be liable for stipulated penalties for failure to comply with the requirements of sections II, IV, and V of this Consent Decree as follows:

(a)   For failure to comply with the training requirements of paragraph 7, subparagraph (a) of this Consent Decree, LCD shall pay a stipulated penalty of One Thousand Dollars ($1,000) per quarter.

(b)   For failure to comply with the contract requirements of paragraph 7, subparagraph (b) of this Consent Decree, LCD shall pay a stipulated penalty of Five Hundred Dollars ($500) per occurrence.

(c)    For failure to timely submit a required notice under paragraph 7, subparagraph (c) of this Consent Decree, LCD shall pay a stipulated penalty of Five Hundred Dollars ($500) per occurrence.

(d)    For failure to comply with the requirements of paragraph 7, subparagraph (d) of this Consent Decree, LCD shall pay a stipulated penalty of One Thousand Dollars ($1,000) per day.

(e)    LCD shall pay a stipulated penalty of One Thousand Dollars ($1,000) per day for failure to timely pay the civil penalty required by paragraph 4 of this Consent Decree.

20.    SEP Stipulated Penalties: Subject to the *force majeure* provisions of section VIII, LCD shall be liable for stipulated penalties for failure to implement the SEP required by this Consent Decree as follows:

(a)    If LCD fails to establish an interest-bearing SEP escrow account or to fund it, within thirty (30) days after entry of the Consent Decree, at the amounts specified herein, LCD shall pay a stipulated penalty equal to $25,000, which shall be in addition to any stipulated penalty assessed under Subparagraph (b), (c), or (d).  The penalty under this Subparagraph shall accrue as of the date establishment and funding of the escrow account is due.

(b)    If by three hundred sixty (360) days from entry of the Consent Decree, LCD has not satisfactorily completed the SEP, LCD shall pay stipulated penalties of $50 per day for each day thereafter that the SEP is not satisfactorily completed.  If LCD has not satisfactorily completed the SEP within three hundred sixty (360) days due to the failure of the City to cooperate with the completion of the SEP, LCD may seek an extension of the 360 day completion period from EPA.

(c)    At any time between three hundred sixty (360) and six hundred forty (640) days from entry of the Consent Decree, if the United States determines that LCD is not making a good faith effort to satisfactorily complete the SEP, it

may terminate the SEP.  In addition, the SEP shall be deemed terminated (if not previously terminated by the United States under this Subparagraph) if not satisfactorily completed after six hundred forty (640) days from entry of the Consent Decree.  The United States shall provide a written notice of SEP termination to LCD.  If the SEP is terminated, stipulated penalties under Subparagraph (b) shall cease to accrue, and LCD shall be liable for a lump sum stipulated penalty of $158,000, less any amount that LCD has paid under Subparagraph (b) and less any eligible SEP expense as defined in paragraph 2(C) of Attachment 1.  If LCD pays a termination penalty under this Subparagraph, it shall not be liable for penalties that accrued but had not yet been demanded under Subparagraph (b).

(d)      If LCD fails to comply with the schedule for submitting the LCD SEP Completion Report, LCD shall pay, in addition to any stipulated penalties required under Subparagraphs (a), (b), and (c) above, stipulated penalties for such failure to report, as follows:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $100 | 1st through 20th day |
| $250 | Each day beyond 20 |

Such penalties shall accrue from the date LCD was required to submit the LCD SEP Completion Report until the relevant report is submitted.

21.   All stipulated penalties shall begin to accrue on the day a violation occurs and shall continue to accrue until the violation ceases.   Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.  Any stipulated penalty accruing pursuant to this section shall be payable on demand and due not later than thirty (30) days from EPA's written demand.  Stipulated penalties shall be paid in the same manner as set forth in paragraph 5.  A transmittal letter shall accompany the payment of stipulated penalties to refer to this

case by name, civil action number, this Consent Decree (including date of entry), USAO No. 2005V01017, and DOJ File No. 90-5-2-1-08655.

22. If LCD fails to pay stipulated penalties owed pursuant to this Consent Decree within thirty (30) days of EPA's written demand, it shall pay interest on the late payment for each day of late payment after the initial thirty (30) day time period. The rate of interest shall be the most recent interest rate determined pursuant to 28 U.S.C. § 1961. If Defendant disputes its obligation to pay part or all of the stipulated penalty, it shall initiate the dispute resolution procedure under section IX (Dispute Resolution) of this Consent Decree. If Defendant invokes dispute resolution, Defendant shall pay the United States any amount that it does not dispute.

23. Payment of stipulated penalties for violation of this Consent Decree is in addition to the United States' right to seek additional monetary penalties or other relief for the violations for which stipulated penalties were imposed. In addition, the United States reserves its right to pursue any or all relief for any or all violations outside the provisions of this Consent Decree.

## VII. RIGHT OF ENTRY

24. EPA and its contractors, consultants and agents shall have authority to enter any LCD work site at all reasonable times upon proper presentation of correct credentials. This provision in no way limits or otherwise affects any right of entry held by the EPA pursuant to applicable federal, state or local laws, regulations and permits.

## VIII. *FORCE MAJEURE*

25. Defendant's performance of the obligations in paragraph 7 and section V of this Consent Decree may be excused or delayed to the extent, and for the period of time, that such performance is prevented or delayed by events that constitute a *force majeure*.

26. For purposes of this Consent Decree, a *force majeure* is defined as any event arising from causes beyond the control of Defendant, including its subcontractors, and that cannot be overcome by Defendant's diligent and timely efforts. Economic hardship,

normal inclement weather, and increased costs of performance shall not be considered events beyond the reasonable control of Defendant for purposes of determining whether an event is a *force majeure*.

27.   In the event of a *force majeure*, the time for performance of the activity delayed by the *force majeure* shall be extended for the time period of the delay attributable to the *force majeure*.  The time for performance of any activity dependent on the delayed activity may be similarly extended, except to the extent that the dependent activity can be implemented in a shorter time.  EPA shall determine whether dependent activities will be delayed by the *force majeure* and whether the time period should be extended for performance of such activities.  Defendant shall adopt all reasonable measures to avoid or minimize any delay caused by a *force majeure*.

28.   When an event occurs or has occurred that may delay or prevent the performance of any obligation of this Consent Decree, Defendant shall notify by telephone (415-947-4106) the Chief, Air Enforcement Office, Air Division of the EPA, Region IX, within seventy-two (72) hours of such event.  Telephone notification shall be followed by written notification, made within seven (7) calendar days of such event.  The written notification shall fully describe:

(a)   the event that may delay or prevent performance;

(b)   reasons for the delay, and the reasons the delay is beyond the reasonable control of the Defendant;

(c)   the anticipated duration of the delay;

(d)   actions taken or to be taken to prevent or minimize a delay;

(e)   a schedule for implementation of any measures to be taken to mitigate the effect of the delay;

(f)   any dependent activities and the time needed to implement any dependent activities; and

(g)   whether Defendant claims the event to be a *force majeure*.

29.   Defendant's failure to comply with the notice requirements provided under this section for any delay in performance will be deemed an automatic forfeiture of its right to assert that the delay was caused by a *force majeure* unless such failure to provide notice was caused by a *force majeure*.

30.   Within seven (7) calendar days after receiving written notice from Defendant pursuant to section VIII, EPA shall provide written notification to Defendant stating whether Defendant's request for a delay is justified, and whether EPA agrees that such delay was caused by a *force majeure*.   EPA's failure to respond to a request for delay shall be deemed a denial of that request.  If Defendant disagrees with EPA's determination, it may initiate dispute resolution procedures pursuant to section IX (Dispute Resolution) of this Consent Decree.

## IX. DISPUTE RESOLUTION

31.   If Defendant disputes any determination made by EPA under this Consent Decree related to (1) a request by EPA for stipulated penalties, (2) EPA's determination related to *force majeure*, or (3) the termination of the Consent Decree under paragraph 45, it shall send a written notice to EPA and the Department of Justice outlining the nature of the dispute and requesting informal negotiations to resolve the dispute. Such period of informal negotiations shall not extend beyond fifteen (15) working days from the date when the notice was sent unless the parties agree otherwise.

32.   If the informal negotiations are unsuccessful, the determination of EPA shall control, unless Defendant files a motion with this Court for dispute resolution.  Any such motion must be filed within thirty (30) calendar days after receipt by Defendant of a notice in writing from EPA terminating informal negotiations and must be concurrently sent to DOJ and EPA.  The United States shall then have thirty (30) calendar days to respond to Defendant's motion.  In any such dispute resolution proceeding, Defendant bears the burden of proving, by preponderance of the evidence, that (1) in disputes regarding section VIII (*Force Majeure*), the delay was caused by circumstances beyond the reasonable control of Defendant, its contractors,

and agents, all reasonable measures were taken to avoid or minimize delay, and the duration of the delay was reasonable under the circumstances; and (2) in disputes regarding termination of the Consent Decree under paragraph 45, Defendant has satisfied all of its obligations under this Consent Decree.  In disputes regarding EPA's request for stipulated penalties under section VI, EPA shall bear the burden of proving, by preponderance of the evidence, that Defendant violated the terms and conditions of the Consent Decree.

33.    A timely motion by Defendant will not toll the accrual of stipulated penalties under this Consent Decree, but payment shall be stayed pending resolution of the dispute.

## X. <u>NOTIFICATION</u>

34.    Except as otherwise specifically stated, all notices and submissions from Defendant to EPA required by this Consent Decree shall be sent by certified mail, express mail, or similar overnight mail delivery service with return receipt requested, or delivered in person, not later than the day that such notification or submission is required by this Consent Decree, and addressed to:

> Director, Air Division (AIR-1)
> U.S. Environmental Protection Agency, Region IX
> 75 Hawthorne Street
> San Francisco, CA 94105
> Attn: John Brock, AIR-5

If the due date for a notice or report falls on a weekend day or federal or State of Arizona holiday, the notice or report shall be due on the next working day.  All notices and reports submitted to EPA or DOJ shall refer to this Consent Decree and the date of entry of the Consent Decree, and shall cite the case name, the case number, USAO No. 2005V01017, and DOJ File No. 90-5-2-1-08655.

35.    All submissions to EPA required by this Consent Decree shall be signed and affirmed by a responsible official of the Defendant using the following certification statement:

I certify under penalty of law that I have examined and am familiar with the information submitted in this document and all attachments and that, based on inquiry of those individuals immediately responsible for obtaining the information, I certify that the information is true, accurate, and complete to the best of my knowledge, information, and belief.  I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment.

36.   Notice as required by this Consent Decree shall be submitted to:

U.S. Department of Justice:

      Chief, Civil Division
      U.S. Attorney's Office
      Two Renaissance Square
      40 N. Central Avenue, Suite 1200
      Phoenix, Arizona 85004-4408

Lennar Communities Development, Inc.:

      Alan Jones
      Regional Vice President,
      Lennar Communities
      Development, Inc.
      1150 West Grove Parkway, #109
      Tempe, AZ 85283

      Frances Phillips, Esq.
      Gardere Wynne Sewell LLP
      3000 Thanksgiving Tower
      1601 Elm Street
      Dallas, TX 75201-4761

# XI. <u>MISCELLANEOUS</u>

37.   Entry of this Consent Decree and compliance with the requirements herein shall be in full settlement and satisfaction of the civil judicial claims of the United States against Defendant as alleged in the Complaint filed in this action and in the NOV dated April 27, 2005.  This Consent Decree resolves only those matters specifically alleged in the Complaint filed in this action and in the NOV dated April 27, 2005 through the date of lodging of this Consent Decree.

38.   Except as specifically provided herein, the United States does not waive any rights or remedies available to it for violation by Defendant of federal or state laws or regulations.  The United States reserves all legal and equitable remedies to enforce the

provisions of this Consent Decree.  This Consent Decree shall in no way affect the United States' ability to bring future actions for any matters not specifically alleged in the Complaint filed in this action and in the NOV dated April 27, 2005, through the date of lodging of this Consent Decree, and settled by this Consent Decree.  Nothing in this Consent Decree is intended to nor shall be construed to operate in any way to resolve any criminal liability of Defendant.

39. This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

40. If LCD fails to pay on a timely basis the full amount of any penalty or interest, it shall be liable for the United States' enforcement and collection expenses, including, but not limited to, attorney fees and costs incurred by the United States for collection proceedings.

41. The United States shall be deemed a judgment creditor for the purposes of collecting any penalties due under this Consent Decree.

42. Defendant shall not deduct the civil penalty paid under this Consent Decree in calculating its federal income tax.  Additionally, for federal income tax purposes, LCD agrees that it will neither capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

43. Each party shall bear its own costs and attorneys' fees in this action, except as otherwise provided herein.

44. This Consent Decree contains the entire agreement between the parties.  This Consent Decree shall not be enlarged, modified, or altered unless such modifications are made in writing and approved by all parties and the Court, provided, however, that any time limit for completion of activities under the SEP may be modified by agreement in writing between EPA and LCD.

45. This Consent Decree shall terminate according to the procedure provided in this paragraph.  After Defendant has complied with the requirements of paragraphs 4, 7, and 8, and section VI (Stipulated Penalties) of this Consent Decree, Defendant shall

provide EPA notice, stating that Defendant has satisfied all obligations of the Consent Decree and believes the Consent Decree can be terminated.  Defendant's notice shall refer to this paragraph 45.  Thereafter, EPA will provide Defendant with a written response, either stating EPA's agreement that the Consent Decree may be terminated, or stating EPA's determination that the Consent Decree should not be terminated.  If EPA fails to provide written response within sixty (60) calendar days after receiving written notice from Defendant or if EPA determines that the Consent Decree should not be terminated, Defendant may initiate dispute resolution procedures pursuant to section IX (Dispute Resolution).  If EPA determines that the Consent Decree may be terminated, the United States shall file a motion with the Court seeking termination.

46.   The Court shall retain jurisdiction to resolve any disputes that arise under this Consent Decree.

47.   Defendant agrees and acknowledges that final approval of this Consent Decree by the United States and entry of this Consent Decree is subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, opportunity for public comment for at  least thirty (30) calendar days, and consideration by the United States of any comments prior to entry of the Consent Decree by the Court.  The United States reserves its right to withdraw consent to this Consent Decree based on comments received during the public notice period.  Defendant consents to entry of this Consent Decree without further notice to the Court.

## XII. FINAL JUDGMENT

48.   Upon entry by this Court, this Consent Decree shall constitute a final judgment for purposes of Fed. R. Civ. P. 54 and 58.

1          **ORDER**

2     IT IS SO ORDERED:

3

4     DATED this 5th day of February, 2010.

5

6

7

8                                   Frederick J. Martone
                                    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For the Plaintiff United States of America:

John C. Cruden
Acting Assistant Attorney General
Environment & Natural Resources Division

Dated: _____          _____
                             ELLEN M. MAHAN
                             Deputy Section Chief
                             Environmental Enforcement Section

                             Dennis K. Burke
                             United States Attorney
                             District of Arizona

Dated: _____         _____
                             SUE A. KLEIN
                             Assistant United States Attorney
                             District of Arizona

Dated: _____         _____
                             Laura Yoshii
                             Acting Regional Administrator
                             U.S. Environmental Protection Agency,
                             Region IX
                             San Francisco, CA 94105

Dated: _____         _____
                             Cynthia Giles
                             Assistant Administrator
                             Office of Enforcement and Compliance
                             Assurance
                             U.S. Environmental Protection Agency,
                             Washington, D.C.

OF COUNSEL:                  DAVID H. KIM
                             Assistant Regional Counsel

                             DANIEL REICH
                             Assistant Regional Counsel

                             U.S. Environmental Protection Agency,
                             Region IX
                             San Francisco, CA 94105

1  For Defendant Lennar Communities Development, Inc.:

2                                           Lennar Communities Development,  Inc.

3

4  Dated: _____           By  _____
5                                           Alan Jones
                                            Regional Vice President,
                                            Lennar Communities
6                                           Development, Inc.
                                            1150 West Grove Parkway, #109
7                                           Tempe, AZ 85283

8
   Dated: _____           By  _____
9                                           Frances E. Phillips, Esq.
                                            Gardere Wynne Sewell LLP
10                                          3000 Thanksgiving Tower
                                            1601 Elm Street
11                                          Dallas, TX 75201-4761

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT 1**

1.    <u>OVERVIEW</u>

The Lennar Communities Development Supplemental Environmental Project ("LCD SEP") involves reducing particulate matter and other harmful air pollutants from diesel engine exhaust by reducing emissions from diesel-fueled nonroad and onroad equipment and vehicles currently operated and maintained by the City of Phoenix (the "City"). The purpose of the LCD SEP is to reduce the discharge of pollutants into the City's environment. The LCD SEP will be composed of retrofitting the equipment listed in Attachment 2. LCD shall fund projects through an escrow account established by LCD.

2.    <u>PROJECT PARAMETERS</u>

A.   LCD shall spend a total of not less than ONE HUNDRED FORTY-FOUR THOUSAND AND NINETY-FOUR DOLLARS ($144,094), plus any interest earned, to implement the LCD SEP. The LCD SEP shall be completed by no later than three hundred and sixty (360) days from entry of the Consent Decree, or at another time mutually agreed upon in writing by LCD and EPA.

B.   Not later than thirty (30) days after entry of the Consent Decree, LCD shall establish an interest-bearing escrow account that meets the requirements of the Consent Decree and Attachments 1 and 2 hereto and deposit the amount of ONE HUNDRED FORTY-FOUR THOUSAND AND NINETY-FOUR DOLLARS ($144,094) into the escrow account.

C. Eligible SEP expenses.  SEP funds may be used for expenses necessary to implement approved projects including: (1) the costs of data logging and other preliminary evaluations for determining the technical effectiveness of applying controls on any onroad or nonroad equipment or vehicles; (2) purchase, installation and appropriate maintenance of controls; and (3) the costs for preparation of reports by vendors related to the SEP and for the dissemination of results.  Expenses in excess of 20% of the contract bid to the City for purchase and installation of a retrofit device shall be presumed to not be eligible expenses and should be processed in accordance with paragraph 2(E) below.  No expenses incurred

by LCD or the City related to administrative expenses, legal fees or contractor oversight for the projects shall be considered eligible SEP expenses.

D.  LCD may request EPA's opinion as to whether any SEP expense constitutes an eligible SEP expense as defined in paragraph 2(C) of Attachment 1.  LCD shall provide a copy of information related to an eligible SEP expense to EPA, and within ten (10) days of EPA's receipt, EPA shall contact LCD if EPA finds the expense ineligible.  Approval by EPA of a proposed eligible SEP expense shall not be unreasonably withheld as long as the request is consistent with paragraph 2(C) of Attachment 1 and is related to a piece of equipment listed in Attachment 2.  EPA may object to the SEP expense if it believes that the information shows the proposed SEP expense is inconsistent with paragraph 2(C) of Attachment 1 or if EPA believes there is insufficient information to make such determination.

E.  A schedule for the contracting and purchase of control technologies and for the installation and maintenance of the vehicles and equipment; and a detailed breakdown of expenses shall be provided to EPA by LCD no later than one hundred and twenty (120) days from entry of the Consent Decree.

F.  If LCD has not spent all the SEP funds for eligible SEP expenses related to the equipment in Attachment 2, it may provide an additional list of equipment to retrofit for approval to EPA to use the remaining SEP funds.

3.   <u>ADDRESSEES</u>

Notwithstanding the notice provisions set forth in the Consent Decree, whenever notifications, submissions, or communications regarding the LCD SEP are required by the Consent Decree and Attachments 1 and 2 hereto, such notification, submission, or communications shall be made in writing and addressed as follows:

Frances E. Phillips, Esq.
Gardere Wynne Sewell LLP
3000 Thanksgiving Tower
1601 Elm Street

1  Dallas, TX 75201-4761
   fphillips@gardere.com
2
   Ronald Serio
3  City of Phoenix Public Works Department
   Equipment Management Division
4  2441 S. 22nd Avenue
   Phoenix, AZ 85009
5  ron.serio@phoenix.gov
6
   Roza Ferdowsmakan
7  Assistant City Attorney
   City of Phoenix
8  200 W. Washington St., 13th Floor
   Phoenix, Arizona 85003
9  roza.ferdowsmakan@phoenix.gov

10 Daniel Reich
   Assistant Regional Counsel
11 Office of Regional Counsel (ORC-2)
   U.S. Environmental Protection Agency, Region 9
12 75 Hawthorne Street
   San Francisco, CA 94105
13 reich.daniel@epa.gov

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28